IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **ROUTE APP, INC.**, a Delaware corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>**ORDERPROTECTION.COM, INC.**, a Delaware corporation; **JULIAN WILSON**, an individual; **JOHN CLARK**, an individual; **MATTHEW J. LEFRANDT**, an individual; **JOHN PERKINS**, an individual; **TANNER B. CHATTERLEY**, an individual; and **LUKE STEELE**, an individual.<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:23-cv-606-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff's Motion for Preliminary Injunction [ECF No. 29]. On July 30, 2024, the court held a hearing on the motion. At the hearing, David L. Mortensen, Brandon T. Christensen, and Charles Dennis Morris represented Plaintiff. Matthew L. Lalli and Troy J. Aramburu represented Defendants. The court took the matter under advisement. Now being fully informed, the court issues the following Memorandum and Decision.

## BACKGROUND

Plaintiff is a package tracking company that offers a suite of post-purchase products and services to assist Merchants in improving their customer experience. Plaintiff has devoted significant time and resources to developing the features of Route Protect. Specifically, Plaintiff

1

has spent over six years and millions of dollars developing Route Protect as a shipping insurance solution. The Confidential Information is some of Plaintiff's most valuable and important confidential and trade secret information.

Given the importance of this information, when Merchants create an account, they must click "Continue." Above the "Continue" button, in bold and underlined text, appears the following statement: "By continuing, you are agreeing to our Terms of Service and Privacy Policy." The statement is hyperlinked to Plaintiff's Terms and Conditions. Merchants see the same statement each time they log in to their Merchant portal, the "home base" for Route services. By accepting these Terms and Conditions, the individual creating or signing into the Merchant pool represents and warrants that they have "the authority to bind that company or other legal entity to them Terms and Conditions of Use and, in such event, 'you' and 'your' will refer and apply to that company or other legal entity in addition to you."

The Former Employee Defendants each worked for Plaintiff for a period of time, and, as such, they all signed Confidentiality Agreements. Mr. Clark, Mr. Chatterley, and Mr. Steele signed Non-Disclosure Agreements. Mr. Steele specifically also signed a Non-competition, Confidentiality, and Non-solicitation Agreement. By virtue of their employment and positions at Route, the Former Employees had access to Plaintiff's Confidential Information and knew, or should have known, of its importance to Plaintiff's products and business.

Mr. Wilson is the co-founder of Dose of Roses, a company that became a Route Merchant in August 2020 (and now is defunct) after being contacted by Mr. Lefrandt. Like every other Merchant, Dose of Roses had a Merchant portal, which required it to agree to Plaintiff's Terms and Conditions. While Dose of Roses was a Merchant, Mr. Wilson was the only person for the implementation of Route Protect on the Dose of Roses e-commerce store. Thus, Plaintiff

believes that Mr. Wilson registered or at least accessed Dose of Roses' Merchant account during the company's time as a Merchant. Therefore, both Dose of Roses and Mr. Wilson had access to Plaintiff's Confidential Information.

In October 2020, while Dose of Roses was still a Merchant, Mr. Wilson and Mr. Lefrandt discussed the possibility of starting a shipping protection business. As part of these discussions, Plaintiff believes that Mr. Wilson asked, convinced, or encouraged Mr. Lefrandt to disclose certain aspects to Route Protect, strategies and techniques related to including components and features related to acquiring and retaining Merchants, and confidential information regarding Plaintiff's customers or customer lists. Plaintiff also believes that Mr. Lefrandt agreed to share this information, which Mr. Wilson used to start OrderProtection ("Defendant") and eventually develop a competing shipping protection product.

After his communications with Mr. Lefrandt, Mr. Wilson formed Defendant OrderProtection in January 2021. OrderProtection is a business that purports to offer shipping protection, e-commerce revenue support, and other similar services. OrderProtection's shipping solution product appears to be a knockoff of Route Protect. The Former Employees eventually stopped working for Plaintiff and started to work for OrderProtection. By virtue of his position at OrderProtection, Plaintiff believes that Mr. Wilson solicited, recruited, or encouraged, each of the Former Employees to work for OrderProtection. In total, Plaintiff is aware of eleven individuals, including the Former Employees, who worked for OrderProtection after working for Plaintiff.

Further, Plaintiff believes that Mr. Wilson improperly used the Confidential Information he acquired as a Route Merchant to start Defendant and develop a competing shipping product. It also believes that he and Defendant induced, encouraged, or assisted the Former Employees to

3

disclose Plaintiff's Confidential Information. Finally, in addition to soliciting Plaintiff's Merchants, Plaintiff believes that Mr. Wilson and the Former Employees targeted and solicited Plaintiff's Merchants away from Plaintiff and toward Defendant.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff moves the court for a preliminary injunction prohibiting Defendants from taking the following actions pending resolution of the claims in Plaintiff's Complaint:

i. Prohibiting Defendants from retaining, accessing, using, disclosing, or distributing Plaintiff's confidential information and trade secrets;

ii. Prohibiting Mr. Wilson, Mr. Lefrandt, Mr. Perkins, Mr. Chatterley, and Mr. Steele from soliciting, recruiting, encouraging, or inducing (or attempting to recruit, encourage, or induce) any Route merchant or customer to reduce, alter, or terminate its relationship with Plaintiff;

iii. Prohibiting Mr. Wilson, Mr. Lefrandt, Mr. Perkins, Mr. Chatterley, and Mr. Steel from diverting (or attempting to divert) any potential Route merchant or customer away from Plaintiff;

iv. Prohibiting Mr. Wilson, Mr. Lefrandt, Mr. Perkins, Mr. Chatterley, and Mr. Steele from soliciting, recruiting, encouraging, or inducing (or attempting to solicit, recruit, encourage, or induce) any Route employee, consultant, or independent contractor to reduce, alter, or terminate its relationship with Plaintiff;

v. Prohibiting Mr. Wilson from directly or indirectly participating in any manner with any person, firm, association, corporation, or other entity (including Defendant) that competes with, or has been formed to pursue a business that would compete with, Plaintiff;

    vi.        Prohibiting Mr. Wilson from operating Defendant OrderProtection, a competing shipping protection business that was developed using Plaintiff's confidential information and trade secrets;

    vii.       Prohibiting Mr. Steele from directly or indirectly, as an employee or otherwise, competing with Plaintiff in Utah by developing or substantially contributing to a business or service (including Defendant OrderProtection) that provides shipping insurance in the e-commerce space or otherwise directly competes with Plaintiff; and

    viii.      Prohibiting any other acts that the court deems appropriate for injunctive relief.

## DISCUSSION

To prevail on a motion for preliminary injunction, the movant must prove that four factors weigh in its favor: "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). "[A] showing of probably irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," thus "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Onyx Lifestyle Ltd. V. First Data Merchant Servs., LLC*, 2020 WL 3065319, at*2 (D. Utah June 9, 2020). Here, Plaintiff cannot satisfy the second requirement of demonstrating irreparable harm.

In the *Navidium* case, the defendants argued that Route App waited one year after it knew defendants' plan to create a competing entity, and three months after the competing entity became publicly available, before seeking injunctive relief. Ex. 1, pg. 7. The court there found

5

that even applying the shorter three-month delay, Route App's "delay is another factor that cuts against a finding of irreparable harm." *Id.*; *see also Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston*, 2023 WL 6609566, at *2 (D. Utah Oct. 9, 2023). Here, Plaintiff's unexplained and unreasonable delay in moving for preliminary injunction—not just for three but for twenty months—refutes any claim of irreparable harm. On or around September 26, 2022, Plaintiff sent Defendants a "cease and desist" letter alleging that Defendants were infringing on its copyrights and trade secrets. Plaintiff waited a year before filing this complaint on September 5, 2023 and waited eight months before seeking injunctive relief. This delay is basis enough to deny the Motion.

Furthermore, not only has Plaintiff failed to show immediate, irreparable harm due to its unreasonable delay, but Plaintiff's claims are compensable by money damages, which also refutes irreparable harm. A plaintiff suffers "irreparable injury" only when the court is unable to grant an effective monetary remedy after a full trial because such damages would be inadequate of difficult to ascertain. *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). "Simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

Despite having so much time before filing the Motion, Plaintiff provides no evidence that damages have actually occurred. Instead, through conclusory arguments, Plaintiff asserts that it will suffer irreparable harm absent the injunction through unexplained harm to its reputation, and unsupported loss of "years' worth of business goodwill amongst its current and prospective Merchants." Plaintiff alleges that it lost forty-three Merchants, but it has failed to articulate how its "goodwill amongst its current and prospective Merchants" has been harmed, let alone how Defendants are the cause of its alleged losses. Plaintiff also concludes that it has been irreparably

6

harmed by "los[ing] vital members of its workforce." Again, Plaintiff articulates its loss by identifying eleven employees who have allegedly joined Defendants.

Route App's "irreparable harm" is clearly compensable through monetary damages. Plaintiff identified the number of Merchants it has lost, and even if it can link the loss of these Merchants to some act of Defendants, this court easily could determine the monetary value of this alleged loss through simple accounting. Similarly, Plaintiff has identified the number of employees it has lost and again, Plaintiff can easily determine what expenses it has allegedly incurred while hiring new employees. Monetary damages can rectify any alleged harm Plaintiff has sustained. As such, Plaintiff has not established a legitimate threat of irreparable harm, and the court should deny the motion.

## CONCLUSION

The court DENIES Plaintiff's Motion for Preliminary Injunction.

DATED this 13th day of August 2024.

BY THE COURT:

DALE A. KIMBALL
United States District Judge